# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SAVANAH WIGGINS,

                              Plaintiff,

      -v.-                                                     3:15-CV-272 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

PETER A GORTON, ESQ., for Plaintiff
JOSHUA L. KERSHNER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, by the Honorable Brenda K. Sannes, United States District Judge, by Order dated July 24, 2015 (Dkt. No. 12), in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") Benefits on August 5, 2011, alleging disability beginning May 7, 2011. (Administrative Transcript ("T") at 14, 147-53). The application was denied initially on October 27, 2011. (T. 72-88). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 25, 2013. (T. 28-71). On February 14, 2013, ALJ Jennifer Gale Smith found plaintiff was not disabled. (T. 11-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 27, 2015. (T. 1–4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the

residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record

contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the administrative hearing on January 25, 2013, plaintiff was 20 years old. (T. 33, 147). Plaintiff graduated high school, and was attending a four year college. (T. 34). During the school year, she lived on campus with three roommates. (T. 481). Her employment history included part-time work as a retail cashier during the summer and school breaks, and work-study during the college academic year. (T. 35-37, 52, 162).

Plaintiff was diagnosed with systemic lupus erythematosus[1] ("SLE") in February 2010 after experiencing joint pain, swelling, and arthritis in her hands and knees. (T. 339). She was subsequently diagnosed with lupus nephritis, when the SLE began to impact her kidney function. (T. 392). She also experienced numbness and discoloration of her hands in cold weather, a disorder known as Reynaud's Syndrome. (T. 369, 474).

---

[1] SLE is an autoimmune disease in which the body's immune system mistakenly attacks healthy tissue. https://www.nlm.nih.gov/medlineplus/ency/article/000435.htm.

Plaintiff withdrew from college during her freshman year due to her impairments, but returned a semester later. (T. 45). She was hospitalized in May 2011 after experiencing a seizure, causing her to miss several weeks of classes. (T. 293-308, 402, 406). Plaintiff testified that she regularly missed classes one to two days per week due to fatigue or pain from her impairments, and that she had received accommodations from most of her professors in order to make up for her absences. (T. 38-39).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 16-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 5, 2011. (T. 16). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: "lupus nephritis; seizure disorder; Raynaud's disease; systemic lupus; and erythematous.[2]" (*Id*.). The ALJ found that plaintiff's other documented physical impairments, including migraines, hypertension, and inflammatory arthritis, and her medically determinable mental impairments of adjustment disorder and panic disorder were not severe. (T. 16-17). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part

---

[2] The court presumes that this is a typographical error, and that the ALJ meant to list plaintiff's systemic lupus erythematosus, or SLE, as a severe impairment. Neither party has raised an issue with the ALJ's incorrect terminology, and this error did not impact the ALJ's decision.

5

404, Subpart P. (T. 17).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform sedentary work with certain additional nonexertional limitations. (T. 17-20). Specifically, plaintiff could not work from unprotected heights, around moving machinery, or where she would have concentrated exposure to extreme cold. (T. 17). In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 18). The ALJ next determined that plaintiff had no past relevant work. (T. 20). The ALJ proceeded to step five and determined, in light of plaintiff's age, education, and work experience, that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 21.) Therefore, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of August 5, 2011 through the date of her decision. (T. 21-22).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 6-23) (Dkt. No. 16).

2. The ALJ did not properly consider plaintiff's nonexertional limitations and should have obtained the testimony of a vocational expert ("VE"). (Pl.'s Br. at 23-24).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-13) (Dkt. No. 23). For the following reasons, the court agrees with the defendant and will order that the Commissioner's decision be affirmed and the complaint be dismissed.

## DISCUSSION

## VI.   RFC EVALUATION/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute her own judgment for competent medical

opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

**B. Application**

Plaintiff argues that the ALJ did not properly weigh the medical evidence in the record, resulting in an RFC that was not supported by substantial evidence. The court disagrees, and concludes that the ALJ's determination that plaintiff was capable of performing close to the full range of sedentary work was supported by substantial evidence.

In reaching the RFC determination, the ALJ gave "great weight" to the October 18, 2011 opinion of consultative examiner Dr. Mathew George, who opined that plaintiff's history of lupus and the side effects of her immunosuppressive medication imposed moderate limitations on her ability to perform activities requiring exertion. (T. 18, 477). Dr. George recommended that plaintiff avoid heights and operating heavy machinery due to her history of seizures. (*Id*.). Dr. George observed full strength in plaintiff's upper and lower extremities, and found that plaintiff did not appear to be in acute distress during the examination. (T. 476-77). Plaintiff demonstrated a normal gait and could walk on her heels and toes without difficulty. (T. 476). She could perform a full squat, and did not require any assistance changing for the examination, getting on and off the examination table, or rising from her chair. (*Id*.).

During the consultative examination, plaintiff reported that her lupus nephritis was stable with medication and a low fat/low sodium diet, but that she still needed to take occasional naps "to get her going normally." (T. 473). Dr. George noted that plaintiff did not complain of any other stigmata of lupus at the time of the examination,

9

such as headache, altered mental status, rash, joint pain, or excessive photo sensitivity. (T. 474). Plaintiff reported that her Raynaud's disease had been inactive since last winter. She did not take any medication when her Raynaud's symptoms flared up in the cold, but had to go indoors and maintain a warm environment until the symptoms subsided. (T. 474). Plaintiff also reported that her blood pressure was under control. (T. 472). Dr. George noted that plaintiff's inflammatory arthritis, which had not been active since April 2011, did not impose any restrictions on her activities of daily living. (T. 474).

The ALJ also gave "great weight" to the January 6, 2012 findings of plaintiff's treating physician, Dr. Gerald Appel, who evaluated plaintiff's glomerulonephritis, an inflammation of the kidneys that arose in connection with her lupus. (T. 18, 587). Dr. Appel, who had been treating plaintiff since June 2011, reported that she was doing very well, and that her physical examination showed substantially normal results. (T. 429, 587-88). Dr. Appel found that plaintiff's SLE was "clinically doing very well," and that her high blood pressure was well-controlled. (T. 588).

The ALJ likewise gave "great weight" to the October 18, 2011 opinion of psychologist Dr. Mary Ann Moore, who performed a consultative examination of plaintiff. (T. 17, 481-487). Dr. Moore concluded that plaintiff had a normal appearance, intelligible speech, coherent and goal-directed thought processes, full affect, euthymic mood, clear sensorium, proper orientation, intact attention and concentration, intact memory skills, average to above average cognitive functioning, good insight, and fair to good judgment. (T. 17, 483-84). She opined that plaintiff was

able to follow and understand simple directions and instructions, perform simple routine tasks under supervision, consistently perform simple tasks, learn simplistic and complex tasks, and maintain attention and concentration. (T. 17, 484). Dr. Moore noted that plaintiff expressed some difficulty dealing with stress, particularly the stress of college exams, and some sadness and frustration due to her health problems. (T. 482, 484). However, Dr. Moore found that plaintiff could relate adequately with others, make appropriate decisions, and maintain a regular work schedule. (T. 484).

The ALJ cited clinical findings that supported her analysis of the George, Appel, and Moore opinions. (T. 20). Records showed that plaintiff's SLE was coming under control by July 2011. (T. 430). Treatment notes describe plaintiff as "doing well" with no reported pain. (T. 510, 515, 517, 521). Her lupus nephritis was considered to be in remission as of November 2011, and her immunosuppressive medication had been tapered down to maintenance levels. (T. 513, 518, 524).

The ALJ also concluded that plaintiff's activities of daily living demonstrated an ability to perform work at least at the sedentary level. (T. 20). Plaintiff was a full-time college student, majoring in music performance and minoring in business. (T. 20, 34). She lived on campus, and had achieved a 3.66 grade point average for the previous semester.[3] (T. 20, 481). She had to leave school during her freshman year due to her illness, but at the time of the hearing she was on pace to graduate, one year later than

---

[3] Plaintiff testified that she was able to maintain high grades due to significant accommodations by her professors, who excused her repeated absences. (T. 38-39). The only documentary support for these accommodations were emails that plaintiff sent to professors regarding missed classes. (T. 291-325). The court notes that these emails, which may be a representative sample, do not show the one to two absences per week described in the plaintiff's testimony.

11

anticipated. (T. 45). She was a member of a campus club, sung in a school choir, and worked six hours per week in a school administrative office as part of a work study program.[4] (T. 35, 55-56). During her consultative examination, plaintiff reported that she regularly cleaned her dorm room, did laundry, and went shopping. (T. 475). She testified that she did not cook because she ate at the campus cafeteria during the school year, and her mother prepared meals when she was home on break. (T. 58). After being cleared by her doctors following her seizures, plaintiff resumed driving but did not feel comfortable driving alone. (T. 43).

Plaintiff contends that the ALJ erred by assigning "partial weight" to the opinion of treating physician Dr. Henda Bouli, and "little weight" to the opinion of physician's assistant Paul Hodgeman.[5] (Pl.'s Br. at 16-23). Dr. Bouli opined that plaintiff required more than one 10 minute rest break per hour; would have four or more absences per month due to her medical conditions; could sit for less than six hours during an eight-hour workday; needed to alternate positions between sitting and standing; could stand or walk for at least two hours during an eight-hour workday, could occasionally lift up to five pounds, and did not do well in stressful situations. (T. 19, 577-79). PA

---

[4] Plaintiff testified that the number of work study hours per week was determined by the amount of funding that she was awarded each semester. (T. 35).

[5] Plaintiff also contends that the ALJ erred in assigning partial weight to third party affidavits submitted by plaintiff's mother, friend, and college roommate. The ALJ summarized this testimony, but discounted it because it did not come from medically acceptable sources. (T.19). In light of the extensive medical evidence that the ALJ relied upon in her decision, the court concludes that no additional analysis of the affidavits was necessary. The affidavits, which describe the individuals' lay observation of plaintiff's symptoms, were not "critical to the disability determination." *Burden v. Astrue*, 588 F. Supp. 2d 269, 278-79 (D. Conn. 2008) (citing *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).

Hodgeman's opinion was similarly restrictive, finding that plaintiff required complete freedom to rest at will; would be absent from work more than four days per month; could sit for less than six hours during an eight-hour workday; was unable to stand or walk for two hours during an eight-hour workday; could occasionally lift up to ten pounds; and had a severely limited ability to concentrate or sustain an ordinary work pace. (T. 19, 580-82).

The ALJ discounted Dr. Bouli's opinion because it appeared to be substantially based on plaintiff's subjective complaints, and was not consistent with any clinical findings or diagnostic testing. (T. 19). Plaintiff attempts to analogize this case to *Nix v. Astrue*, No. 07-CV-344, 2009 WL 3429616, at *1 (W.D.N.Y. Oct. 22, 2009), in which the court remanded because the ALJ improperly speculated that a physician's opinion was based solely on subjective complaints. Here, unlike *Nix,* the ALJ's decision, and the weight assigned to Dr. Bouli's opinion, was based upon a review of plaintiff's treatment records, and an evaluation of other medical opinions. (T. 18-19). Therefore, the court concludes that the ALJ properly considered Dr. Bouli's opinion and evaluated its consistency with the record as a whole. *See Halloran*, 362 F.3d at 32; *Gruka v. Colvin*, No. 14-CV-795S, 2015 WL 9478242, at *5 (W.D.N.Y. Dec. 29, 2015) (distinguishing *Nix* decision because ALJ sufficiently articulated other reasons for not granting controlling weight to treating physician's opinion).

Plaintiff contends that the ALJ further erred by failing to specifically mention Dr. Bouli's opinion that plaintiff would frequently be absent from work. However, an ALJ is not required to discuss each piece of evidence that she considered, or every

13

observation recorded by a physician. *Balles*, 2013 WL 252970, at *3-4 (N.D.N.Y. Jan. 23, 2013) (citing *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 67, 78-79 (N.D.N.Y. 2005). While the ALJ excluded the unsupported conclusion that plaintiff would likely miss four or more days of work each month from her summary of Dr. Bouli's opinion, such omission does not merit remand, particularly where the ALJ provided other evidence to discount the treating physician's opinion.

The ALJ's consideration of PA Hodgeman's opinion is likewise supported by substantial evidence. PA Hodgeman's conclusions that plaintiff was severely limited in her ability to concentrate or sustain an ordinary work pace, and would be absent from work more than four days a month are not corroborated by any treatment notes. (T. 580). When evaluating the record evidence that plaintiff suffered from fatigue, the ALJ, in her discretion, assigned greater weight to Dr. George's conclusion that such fatigue did not prevent plaintiff from performing sedentary work activities. (T. 18, 20). The ALJ also considered Dr. Moore's conclusion that plaintiff did not suffer any psychiatric impairments that would limit her ability to maintain adequate concentration, attention, or pace in the workplace, and she relied upon plaintiff's strong academic performance and daily activities to conclude that plaintiff's physical impairments did not impact these functional areas either. *Goodale v. Astrue*, 32 F.Supp. 3d 345, 361 (N.D.N.Y. 2012) (ALJ's conclusion, that plaintiff's ability to attend college and obtain a degree contradicted claim of disabling fatigue, was supported by substantial evidence).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v.*

*Barnhart*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). The ALJ also exercised her discretion to discount "check-box" opinions completed by treating sources that were not corroborated by contemporaneous treatment notes. *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009). Accordingly, the ALJ's RFC determination is supported by substantial evidence.

## VII. VOCATIONAL EXPERT

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*,

No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed). This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'" *Id.* However, what constitutes a "significant" number is "fairly minimal." *Id.* (quoting *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[6] are present or when exertional impairments do not fit

---

[6] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs

16

squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Grids. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). The mere existence of a nonexertional impairment does not automatically require consultation with a vocational expert, nor does it preclude reliance on the Guidelines. *Bapp v. Bowen*, 802 F.2d at 603. The requirement for a vocational expert is triggered when a nonexertional impairment causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 605-06. The appropriateness of applying the Grids and the necessity for expert testimony must be determined on a case-by-base basis. *Id*. at 605.

**B.    Application**

Plaintiff argues that the ALJ erred step five by failing to utilize the services of a VE because plaintiff had significant nonexertional impairments, particularly the inability to maintain regular attendance, maintain concentration, complete a workday without an unreasonable number of breaks or rest periods, or maintain an acceptable

---

other than the strength demands.  20 C.F.R. §§ 404.1569a(c), 416.969a(c).

work pace. (Pl.'s Br. at 23-24). The court disagrees.

As described above, the ALJ considered each of these alleged nonexertional impairments and rejected them as part of the RFC analysis and her consideration of the medical opinion evidence, and these findings were supported by substantial evidence. (T. 18-20). Therefore, plaintiff's only relevant nonexertional impairments were the limitations in the RFC regarding exposure to unprotected heights, moving machinery, and extreme cold. (T. 17). Relying on SSR 96-9p, the ALJ found that these postural limitations would not significantly erode the occupational base of sedentary work, and that there were a significant number of jobs in the national economy that plaintiff could perform. (T. 21). The ALJ's conclusion is consistent with caselaw. *Russell v. Colvin*, No. 5:13-CV-1030 (MAD/CFH), 2015 WL 570828, at *20 (N.D.N.Y. Feb. 11, 2015) (seizure disorder which prevented plaintiff from working near unprotected heights or near dangerous moving machinery did not have a significant effect on occupational base); *Crowe v. Comm'r of Soc. Sec.*, No. 6:01-CV-1579 (GLS), 2004 WL 1689758, at *5 (N.D.N.Y. July 20, 2004) (vocational expert not required because nonexertional limitations that included a restriction on exposure to cold temperatures and unprotected heights would not significant erode the occupational base of sedentary work). Likewise, in this case, plaintiff's nonexertional impairments would not require the testimony of a VE or preclude the ALJ's use of the Grids to find that plaintiff was not disabled.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

18

complaint is **DISMISSED**, and it is

    **ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:    May 23, 2016

*Andrew T. Baxter*
Hon. Andrew T. Baxter
U.S. Magistrate Judge